**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES**                                            **CRIMINAL ACTION**

**VERSUS**                                                    **NO.  24-54**

**ELIJAH MARTIN**                                            **SECTION: "G"**


## ORDER AND REASONS

Before the Court is the Defendant Elijah Martin's ("Martin") Motion to Dismiss the Indictment.[1] Martin moves the Court to dismiss the two-count Indictment, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to Martin.[2] The government opposes the motion.[3] For the reasons discussed in more detail below, the Court finds that Section 922(g)(1) is constitutional both on its face and as applied to Martin. The Fifth Circuit's ruling in *United States v. Diaz*[4] forecloses the facial challenge to Section 922(g)(1). Martin's as-applied challenge fails because the government has shown that applying Section 922(g)(1) to Martin "is consistent with this Nation's historical tradition of firearm regulation."[5] Therefore, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 25.

[2] *Id.*

[3] Rec. Doc. 27.

[4] 116 F.4th 458 (5th Cir. 2024).

[5] *Id.* at 467 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022)).

1

## I. Background

On March 22, 2024, a federal grand jury in the Eastern District of Louisiana indicted Martin on two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[6] The Indictment alleges that Martin has prior disqualifying felony convictions: (1) a 2017 conviction for possession of cocaine; (2) a 2018 conviction for possession of a Schedule II controlled dangerous substance and possession of a firearm by a felon; and (3) a 2020 conviction for possession of tramadol.[7]

On February 6, 2025, Martin filed the instant motion to dismiss.[8] On March 5, 2025, the government filed an opposition to the motion to dismiss.[9] On March 10, 2025, Martin filed a reply brief in further support of the motion to dismiss.[10] On March 13, 2025, the Court held oral argument on the motion.[11] On July 3, 2025, Martin filed a supplemental brief in further support of the motion.[12]

## II. Parties' Arguments

### A.    *Martin's Arguments in Support of the Motion*

Martin raises four arguments in support of the motion to dismiss. First, Martin argues that Section 922(g)(1), which makes it "unlawful for any person who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year" to be in possession of

---

[6] Rec. Doc. 1.

[7] *Id.*

[8] Rec. Doc. 25.

[9] Rec. Doc. 27.

[10] Rec. Doc. 30.

[11] Rec. Doc. 34.

[12] Rec. Doc. 41.

a firearm or ammunition, is unconstitutional as applied to him under the Second Amendment as interpreted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*.[13] Martin asserts this case is distinguishable from *United States v. Diaz*,[14] where the Fifth Circuit held that the Section 922(g)(1) is constitutional as applied to a defendant previously convicted of car theft.[15]

Martin argues Section 922(g)(1) is unconstitutional as applied to him because there is no historical evidence to show that convictions for simple drug possession and being a felon in possession of a firearm are analogous to crimes punished with death or permanent estate forfeiture at the Founding.[16] Martin contends *Diaz* forecloses using his prior state conviction for being a felon in possession of a firearm as a basis for applying Section 922(g)(1).[17] Under the Fifth Circuit's ruling in *United States v. Connelly*,[18] Martin argues his prior state convictions for simple drug possession cannot be used as predicate offenses to apply Section 922(g)(1) to him.[19] Even if the government could identify historical regulations justifying temporary disarmament, Martin asserts Section 922(g)(1) would still be unconstitutional because there is no historical support for permanently prohibiting firearm possession.[20]

---

[13] 597 U.S. 1 (2022).

[14] 116 F.4th 458 (5th Cir. 2024).

[15] Rec. Doc. 25-1 at 8.

[16] *Id.* at 9.

[17] *Id.* at 10.

[18] 117 F.4th 269 (5th Cir. 2024).

[19] Rec. Doc. 27-1 at 10–12.

[20] *Id.* at 13.

Second, Martin argues that Section 922(g)(1) is facially unconstitutional.[21] However, he acknowledges that this argument is foreclosed by the Fifth Circuit's ruling in *Diaz*.[22]

Third, if the Court determines that Section 922(g)(1) is constitutional as applied to him, Martin argues it must be struck down as unconstitutionally vague.[23] Under the piecemeal approach now increasingly employed by courts to resolve challenges to Section 922(g)(1), Martin argues the statute no longer prohibits firearm possession by all persons previously convicted of crimes punishable by more than a year of imprisonment.[24] Because the statute is being construed to punish firearm possession by an uncertain subset of individuals, Martin argues the statute is unconstitutionally vague, as it no longer provides fair notice to distinguish what subset of individuals previously convicted of crimes punishable by more than a year of imprisonment have a constitutionally protected right to possess a firearm.[25]

Finally, Martin asserts Section 922(g)(1) is unconstitutional because it exceeds Congress's power to regulate commerce.[26] However, he acknowledges this argument is foreclosed by Fifth Circuit precedent.[27]

---

[21] *Id.* at 14–15.

[22] *Id.*

[23] *Id.* at 15.

[24] *Id.* at 16.

[25] *Id.*

[26] *Id.* at 17–21.

[27] *Id.* at 17 (citing *United States v. Seekins*, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022)).

B.      *The Government's Arguments in Opposition to the Motion*

The government asserts that Section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation.[28] The government contends that disarming Martin based on his conviction for drug and firearms offenses is consistent with the historical tradition of firearms regulation in the United States.[29] The government argues that historical regulations reveal a principle of disarming those feared to disrupt the public order.[30] Considering the concern of danger and violence with drugs, the government argues that Martin's prior convictions should bar him from possessing firearms under this principle as demonstrated by the "going armed" laws discussed in *Rahimi* and *Diaz*.[31]

The government concedes that there was no founding-era law prohibiting drug possession because most illegal drugs sold today did not even exist at the time of the founding.[32] However, the government points out that the Supreme Court has warned against being too formalistic in "historical analogue" comparisons.[33]

The government posits that the central question is "whether founding-era legislatures would have understood their powers to include the ability to pass laws to combat a similar problem, including laws imposing severe criminal punishments and/or estate forfeiture."[34] The government points to founding-era legislation criminalizing the trafficking of contraband, which aimed to curb

---

[28] Rec. Doc 27.

[29] *Id.* at 7.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 9.

[33] *Id.* (quoting *Bruen*, 597 U.S. at 27).

[34] *Id.*

marketplaces trafficking in illicit goods.[35] Therefore, the government argues prohibiting firearm possession for felony convictions of possessing cocaine, a schedule II substance, and tramadol are consistent with the Nation's regulatory tradition.[36]

The government points out that Martin amassed four felony convictions prior to the instant Section 922(g)(1) offenses.[37] Even if any of Martin's convictions do not individually bar his possessing firearms, the government argues his multiple, prior convictions do so, considering Founding-era views of recidivism.[38] The government argues recidivism was punished more severely than first offenses in English, colonial, and Founding-era society.[39] According to the government, punishments could include permanent branding, mutilation, or letter-wearing to expose the incorrigible's crime to the community, permanently and publicly.[40] Therefore, the government argues disarming Martin fits within the tradition of serious and permanent punishment, and it fits neatly within the tradition of providing arms forfeiture as a penalty.[41]

The government argues Section 922(g)(1) is not unconstitutionally vague because the prohibited conduct is clearly defined with sufficient definiteness.[42] Finally, the government notes

---

[35] *Id.* at 10  (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819); *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792); *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790)).

[36] *Id.* at 11.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at 12.

[41] *Id.*

[42] *Id.* at 13.

that Martin's facial Second Amendment challenge and Commerce Clause challenge are foreclosed by Fifth Circuit precedent.[43]

### C.    *Martin's Arguments in Further Support of the Motion*

In the reply brief, Martin points out that his prior convictions are for simple possession of controlled substances (not possession with intent to distribute).[44] Martin argues that the government improperly relies on criminal laws that are not relevantly similar to the crime of drug possession—including laws punishing mail theft, counterfeiting U.S. securities, trading in stolen horses, and "going armed" offensively.[45] Under *Bruen* and *Diaz*, Martin contends none of these laws are a conceptual fit with simple drug possession offenses.[46]

Next, Martin argues the government's reliance on laws that discriminated on the basis of race and religion is misplaced and inconsistent with *Bruen* and *Diaz*.[47] Martin contends none of those laws disarmed people like him based on criminal convictions.[48] Martin asserts that the government is relying on the same type of means-end scrutiny that the Supreme Court rejected in *Bruen*.[49]

Last, Martin asserts the government recidivism argument lacks historical support.[50] Martin points out that the laws cited by the government punished repeat burglars, thieves, and robbers—

---

[43] *Id.* at 12–13.

[44] Rec. Doc. 33 at 1.

[45] *Id.* at 3.

[46] *Id.* at 4.

[47] *Id.* at 7.

[48] *Id.* at 9.

[49] *Id.*

[50] *Id.*

all offenses that are not relevantly similar to simple drug possession.[51] Additionally, Martin argues the government has not shown that recidivism of any sort resulted in permanent punishment like death, as required by *Diaz*.[52] Because the government has not carried its burden under *Bruen* and *Diaz*, Martin argues this Court should grant his motion to dismiss.[53]

In the supplemental brief, Martin directs the Court's attention to *United States v. Kimble*, a recent opinion by the Fifth Circuit.[54] *Kimble* held that Section 922(g)(1) is constitutional as applied to a defendant with prior convictions for drug trafficking.[55] In doing so, Martin asserts the Fifth Circuit made two important points suggesting that Section 922(g)(1) is unconstitutional as applied to a defendant with prior convictions for drug possession.[56] First, Martin points out that *Kimble* found historical laws punishing mail theft, counterfeiting U.S. securities, and trading in stolen horses are not "'relevantly similar' to the modern state and federal drug-trafficking laws."[57] Second, Martin contends the Fifth Circuit held that defendants with drug trafficking priors can be disarmed pursuant to a historical tradition of disarming classes of dangerous people, but he argues the Fifth Circuit explicitly drew a distinction between drug trafficking and drug use or

---

[51] *Id.* at 10.

[52] *Id.*

[53] *Id.*

[54] Rec. Doc. 41 at 1 (citing *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025)).

[55] *Id.*

[56] *Id.*

[57] *Id.* (quoting *Kimble*, 142 F.4th at 314).

possession.[58] Therefore, Martin argues *Kimble* supports granting the motion to dismiss because Martin does not have prior convictions for drug trafficking.[59]

### III. Applicable Law

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on "a defect in the indictment," including "failure to state an offense."[60] "The propriety of granting a motion to dismiss an indictment . . . is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. . . . If a question of law is involved, then consideration of the motion is generally proper."[61]

### IV. Analysis

Martin raises both a facial challenge and an as-applied challenge to 18 U.S.C. § 922(g)(1). "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications. So classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation."[62] "When a litigant brings both as-applied and facial challenges, [courts]

---

[58] *Id.* at 2.

[59] *Id.*

[60] Fed. R. Crim. P. 12(b)(3)(B)(v).

[61] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal citations omitted).

[62] *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (quoting *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010)).

generally decide the as-applied challenge first because it is the narrower consideration."[63]

In *Diaz*, the Fifth Circuit held that Section 922(g)(1) is constitutional as applied to a defendant with predicate convictions for car theft, evading arrest, and possessing a firearm as a felon.[64] Because the Fifth Circuit held that Section 922(g)(1) is constitutional in at least one application, Martin cannot show "that no set of circumstances exists under which [Section 922(g)(1)] would be valid."[65] Therefore, Martin's facial challenge must fail. Before addressing whether the statute is unconstitutional as applied, the Court lays out the relevant Second Amendment jurisprudence on the issue.

**A.    *Relevant Second Amendment Jurisprudence***

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." Martin argues that this statute violates the Second Amendment because it infringes on his right to possess firearms.

The Second Amendment states, "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." In *District of Columbia v. Heller*, the Supreme Court struck down "a District of Columbia prohibition on the possession of usable handguns in the home," finding that the statute violated the Second Amendment.[66] The Supreme Court explained "that the Second Amendment . . . codified a pre-existing right" for individuals to "possess and carry weapons in case of confrontation."[67] However,

---

[63] *Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019).

[64] *Diaz*, 116 F.4th at 471–72.

[65] *United States v. Salerno*, 481 U.S. 739, 745 (1987).

[66] 554 U.S. 570, 573 (2008).

[67] *Id.* at 592.

the Court recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and can be subject to certain restrictions, such as the "longstanding prohibitions on the possession of firearms by felons and the mentally ill."[68]

Following *Heller*, the Fifth Circuit "adopted a two-step inquiry for analyzing laws that might impact the Second Amendment."[69] Both before and after *Heller*, the Fifth Circuit repeatedly held that Section 922(g)(1) does not violate the Second Amendment.[70] However, this precedent pre-dates the Supreme Court's recent opinion in *New York State Rifle & Pistol Ass'n v. Bruen*.

*Bruen* abrogated the two-step approach that the Fifth Circuit and other courts had adopted following *Heller*.[71] The Supreme Court held:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[72]

---

[68] *Id.* at 626.

[69] *United States v. McGinnis*, 956 F.3d 747, 753 (5th Cir. 2020) (internal citations and quotation marks omitted). The two-step inquiry proceeded as follows:

> First, we ask whether the conduct at issue falls within the scope of the Second Amendment right. To make that determination, we look to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee. If the burdened conduct falls outside the scope of the Second Amendment, then the law is constitutional and the inquiry is over. Otherwise, we proceed to step two, where we must determine and apply the appropriate level of means-ends scrutiny—either strict or intermediate.

*Id.* at 754 (internal citations and quotation marks omitted).

[70] *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004); *United States v. Darrington*, 351 F.3d 632, 633–34 (5th Cir. 2003); *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001).

[71] *Bruen*, 597 U.S. at 17.

[72] *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

However, Justices who joined the majority's decision in *Bruen* underscored that the opinion does not overturn the longstanding prohibitions on firearm possessions by felons.[73]

Recently, in *United States v. Rahimi*, an eight-justice majority of the Supreme Court upheld the constitutionality of 18 U.S.C. § 922(g)(8), a statute prohibiting the possession of firearms by persons subject to domestic violence restraining orders.[74] The Court found that Section 922(g)(8) "fits comfortably" in the Nation's tradition of "preventing individuals who threaten physical harm to others from misusing firearms."[75] The Court reasoned that surety laws and "going armed" laws are appropriate historical analogues to Section 922(g)(8).[76] Surety laws required individuals to post bonds whenever there was a "probable ground to suspect of future misbehaviour," and they were used to "prevent all forms of violence, including spousal abuse" and the misuse of firearms.[77] Going armed laws prohibited "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land."[78]

Like Section 922(g)(8), the majority found that surety and going armed laws were used "to mitigate demonstrated threats of physical violence."[79] The Court also reasoned that

---

[73] *Id.* at 81 (Kavanaugh, J., concurring) (Roberts, J., joining) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.") (quoting *Heller*, 554 U.S. at 626); *Id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago* about restrictions that may be imposed on the possession or carrying of guns.").

[74] *Rahimi*, 144 S. Ct. at 1903.

[75] *Id.* at 1897.

[76] *Id.* at 1899–1900.

[77] *Id.*

[78] *Id.* at 1900.

[79] *Id.* at 1901.

Section 922(g)(8)'s burden on the Second Amendment is comparable to the burdens imposed by surety and going armed laws because those laws did not "broadly restrict arms used by the public generally."[80] The Court explained that violating these laws could result in imprisonment, and that "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible."[81] The Court concluded that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others."[82]

Following the Supreme Court's opinion in *Rahimi*, the Fifth Circuit upheld the constitutionality of 18 U.S.C. § 922(g)(1), the felon in possession statute also at issue here.[83] In *United States v. Diaz*, the Fifth Circuit applied *Bruen*'s two-part test to Section 922(g)(1).[84] At the first step, the Fifth Circuit held that, despite Diaz's felon status, he was a member of "the people" as the term is used in the Second Amendment.[85] At the second step, the Fifth Circuit found that Section 922(g)(1), as applied in Diaz's case, is "consistent with the Nation's historical tradition" of regulating firearm use.[86]

The Fifth Circuit noted that Diaz had a previous felony theft conviction, and numerous colonial-era laws "severely punish[ed] people like Diaz who had been convicted

---

[80] *Id.*

[81] *Id.* at 1902.

[82] *Id.*

[83] *Diaz*, 116 F.4th at 458.

[84] *Id.* at 466.

[85] *Id.*

[86] *Id.*

of theft," often by way of the death penalty.[87] The Fifth Circuit found that these capital punishment laws were similar in purpose to Section 922(g)(1)'s gun restriction—both laws sought to "deter violence and lawlessness."[88] The Fifth Circuit also found that founding-era capital punishment laws and Section 922(g)(1) carried a similar approach by permanently punishing offenders as a result of their serious crime.[89]

The Fifth Circuit also relied on the going armed laws common to the founding era, which authorized permanent dispossession of firearms for people that carried them publicly in a threatening or offensive manner.[90] The Fifth Circuit reasoned that "[t]he size of these laws' burden on the right to bear arms is comparable to that of [Section] 922(g)(1). They both provide for permanent arms forfeiture as a penalty."[91] Accordingly, the Fifth Circuit found that "[i]mposing permanent disarmament as a punishment is [] within our Nation's history and tradition."[92] For these reasons, the Fifth Circuit concluded that Section 922(g)(1) is constitutional both on its face and as applied to Diaz.[93]

In *United States v. Connelly*, the Fifth Circuit addressed a challenge to 18 U.S.C. § 922(g)(3), which prohibits an unlawful user of a controlled substance from possessing a firearm.[94] While "our history and tradition may support some limits on a presently intoxicated

---

[87] *Id.* at 468–69.

[88] *Id.* at 469.

[89] *Id.*

[90] *Id.* at 470.

[91] *Id.* at 471.

[92] *Id.* at 471–72.

[93] *Id.* at 470.

[94] *United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024).

person's right to carry a weapon" the Fifth Circuit found "they do not support disarming a sober person based solely on past substance usage."[95] Therefore, the Fifth Circuit held that Section 922(g)(3) was unconstitutional as applied to the defendant based solely on her "habitual or occasional drug use."[96]

The Fifth Circuit distinguished *Connelly* in a later decision addressing an as-applied challenge to Section 922(g)(1), *United States v. Contreras*.[97] Contreras's only predicate offense underlying the Section 922(g)(1) charge was a prior conviction for being a user in possession of a firearm.[98] The Fifth Circuit examined the "underlying conduct of the user in possession of a firearm conviction," which showed that Contreras was under the influence of marijuana at the time of his arrest for the disqualifying conviction.[99] The court concluded that Contreras's Second Amendment challenge failed because our Nation has "a history and tradition of disarming those that are intoxicated."[100]

In *United States v. Kimble*, the Fifth Circuit most recently held that Section 922(g)(1) was constitutional as applied to a defendant with prior convictions for drug trafficking.[101] In doing so, the Fifth Circuit rejected the government's argument that historical laws punishing mail theft, counterfeiting U.S. securities, and trading in stolen horses "establish[ed] a historical tradition of severely punishing people convicted of crimes involving the creation, possession, or distribution

---

[95] *Id.* at 272.

[96] *Id.* at 282.

[97] 125 F.4th 725 (5th Cir. 2025).

[98] *Id.* at 730.

[99] *Id.* at 730, 732.

[100] *Id.* at 7323.

[101] *Kimble*, 142 F.4th at 308.

of illicit goods" that justified disarming people with drug trafficking convictions.[102] The Fifth Circuit reasoned that "the government's proffered historical analogues are not 'relevantly similar' to the modern state and federal drug-trafficking laws."[103]

The Fifth Circuit found that defendants with drug trafficking priors can be disarmed pursuant to a historical tradition of disarming classes of dangerous people. The *Kimble* court noted that "[t]he government invokes much of the same historical evidence that it did in *Connelly*" and that *Connelly* "rejected those analogies" because drug users "were not 'dangerous' for reasons comparable to those targeted by the government's proffered analogues."[104] The Fifth Circuit reasoned that "the government's analogues are a closer fit for drug traffickers than for occasional drug users," because "drug trafficking is an inherently dangerous activity."[105]

## B.     Whether Section 922(g)(1) is Unconstitutional as Applied to Martin

"The plain text of the Second Amendment covers the conduct prohibited by [Section] 922(g)(1)."[106] Therefore, the first step of the *Bruen* analysis is satisfied and "[t]he burden thus shifts to the government to demonstrate that regulating [Martin's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'"[107] "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a

---

[102] *Id.* at 312–13.

[103] *Id.* at 314.

[104] *Id.* at 315–16 (quoting *Connelly*, 17 F.4th at 278).

[105] *Id.* at 316–17.

[106] *Diaz*, 116 F.4th at 467.

[107] *Id.* (quoting *Bruen*. 597 U.S. at 24).

historical twin."[108] "Evidence must be 'relevantly similar' to the challenged law."[109] "In assessing similarity, [the Court] consider[s] 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.'"[110]

Martin's criminal history includes convictions for possession of cocaine, possession of a Schedule II controlled dangerous substance, possession of a firearm by a convicted felon, and possession of tramadol.[111] To survive Martin's as-applied challenge under the Second Amendment, "the government must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this."[112] There are no founding-era laws prohibiting drug possession, as many of the illegal drugs distributed today did not even exist at the time of the Nation's founding. However, "[t]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791."[113] The government need not identify a "historical twin," it need only identify a "historical analogue."[114]

To meet this burden, the government primarily relies on founding-era laws criminalizing possessing and/or trafficking contraband.[115] The government cites a 1748 Virginia law authorizing imposition of the death penalty for trading of a stolen horse, a 1792 federal law authorizing

---

[108] *Id.* (quoting *Bruen*. 597 U.S. at 30).

[109] *Id.* (quoting *Bruen*. 597 U.S. at 29).

[110] *Id.* (quoting *Bruen*. 597 U.S. at 29).

[111] Rec. Doc. 1.

[112] *Diaz*, 116 F.4th at 467.

[113] *Rahimi*, 144 S. Ct. at 1897–98.

[114] *Id.* at 1903.

[115] Rec. Doc. 27 at 10 (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819); *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792); *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790)).

imposition of the death penalty for mail theft, and a 1790 federal law that authorized imposition of the death penalty for the making or trading of counterfeit and forged securities.[116] These are the same founding-era laws that the Fifth Circuit considered in *Kimble*. The Fifth Circuit explicitly rejected the government's argument these laws "establish[ed] a historical tradition of severely punishing people convicted of crimes involving the creation, possession, or distribution of illicit goods."[117]

The government also cites founding-era "going armed" laws, which allowed for the disarming of individuals convicted of serious crimes because they may pose a risk of violence or other danger to public safety.[118] In *Rahimi*, the Supreme Court recognized that "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others."[119] These founding-era laws recognize that this conduct "disrupted the public order . . . and le[d] almost necessarily to actual violence."[120]

In *Kimble*, the Fifth Circuit held that Section 922(g)(1) is constitutional as applied to an individual previously convicted of drug trafficking because "drug trafficking is an inherently dangerous activity."[121] Conversely, in *Connelly* the Fifth Circuit held that it was unconstitutional to apply Section 922(g)(3) to habitual or occasional drug users, because "the history and tradition before us support, at most, a ban on carrying firearms while an individual is presently under the

---

[116] *Id.*

[117] *Kimble*, 142 F.4th at 312–13.

[118] Rec. Doc. 46 at 9.

[119] *Rahimi*, 144 S. Ct. at 1899.

[120] *Id.*

[121] *Kimble*, 142 F.4th at 317.

influence."[122] The Fifth Circuit reasoned that "the government's analogues are a closer fit for drug traffickers than for occasional drug users," because "drug trafficking is an inherently dangerous activity."[123]

This case falls somewhere between *Kimble* and *Connelly*. Although Martin does not have any prior convictions for drug trafficking, he is not just an "habitual or occasional drug user." He has three prior felony convictions for possession of controlled substances and a prior conviction for possession of a firearm by a felon. *Connelly* did not involve a convicted felon, rather it dealt with law prohibiting an "unlawful user" of drugs from possessing a firearm.[124] Here, unlike *Connelly*, there is a connection between Martin's possessions of drugs and guns. Martin's 2018 conviction was for possession of a Schedule II controlled dangerous substance *and* possession of a firearm by a felon.

Application of the felon-in-possession statute to drug criminals aims to address a *risk* of violence. Congress has long recognized "that drugs and guns are a dangerous combination."[125] "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed."[126] "This history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons."[127] Therefore, the government has met its burden

---

[122] *Connelly*, 117 F.4th at 282.

[123] *Kimble*, 142 F.4th at 316–17.

[124] *Connelly*, 117 F.4th at 272.

[125] *Smith v. United States*, 508 U.S. 223, 240 (1993) ("In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent.").

[126] *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024).

[127] *Id.*

of showing that applying Section 922(g)(1) to Martin "is consistent with this Nation's historical tradition of firearm regulation."[128] This conclusion is consistent with rulings from courts across the country who have addressed the constitutionality of Section 922(g)(1) as applied to defendants with predicate drug possession and trafficking convictions.[129]

Even if any of Martin's convictions would not individually bar him from possessing firearms, he has four prior felony convictions. Recidivism was punished more severely than first offenses in English, colonial, and Founding-era society. As the Supreme Court has recognized, "[s]tatutes that punish recidivists more severely than first offenders have a long tradition in this country that dates back to colonial times."[130] Traditionally, repeat offenders might suffer permanent branding, mutilation, or letter-wearing to permanently and publicly expose the offenders' crimes.[131] Repeat offenders "might be banished—driven out of the community

---

[128] *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 17).

[129] *See Jackson*, 110 F.4th at 1125–29 (holding Section 922(g)(1) constitutional as applied to a defendant with predicate sale of controlled substance offense); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug trafficking convictions); *United States v. Chenier*, No. CR 22-80-JWD-EWD, 2025 WL 1901345, at *12 (M.D. La. July 9, 2025) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate possession of cocaine offense); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate convictions for DUI and drug possession); *United States v. Carter*, No. CR 23-22, 2024 WL 4723236, at *1 (E.D. La. Nov. 8, 2024) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug trafficking and firearm convictions); *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *5 (E.D. La. Oct. 6, 2024) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug possession and firearm convictions); *United States v. Pearson*, No. 22-CR-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug distribution and firearm convictions); *United States v. Blackshear*, No. 23-CR-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug and firearm convictions); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug distribution convictions).

[130] *Parke v. Raley*, 506 U.S. 20, 26 (1992) (citing I The Acts and Resolves, Public and Private, of the Province of Massachusetts Bay 52 (Boston 1869) (1692 statute providing progressive punishments for robbery and burglary); 3 Laws of Virginia 276–278 (W. Henning ed. 1823) (1705 recidivism statute dealing with hog stealing); *Graham v. West Virginia*, 224 U.S. 616 (1912)).

[131] *See* Brian J. Telpner, Constructing Safe Communities: Megan's Laws and the Purposes of Punishment, 85 Geo. L.J. 2039, 2044–45 (1997) (citing Lawrence M. Friedman, Crime and Punishment in American History 40 (1993)).

altogether."[132] "The underlying message of such permanent punishment was unmistakable: cut off from the community, as a last resort, those people who were incorrigibly harmful."[133] Martin has three prior felony convictions for possessing controlled substances and one prior felony conviction for being a felon in possession of a firearm. Disarming Martin, who committed multiple felony offenses, "fits within th[e] tradition of serious and permanent punishment."[134]

## C.    Whether Section 922(g)(1) is Unconstitutionally Vague

Martin argues that Section 922(g)(1) is void for vagueness. "A criminal statute survives…vagueness review if it defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[135] "[W]hen a vagueness challenge does not involve First Amendment freedoms, we examine the statute only in light of the facts of the case at hand."[136]

18 U.S.C. § 922(g)(1) provides that "it shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to possess in or affecting any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The prohibited conduct is

---

[132] *Id.* at 2045.

[133] *Id.* (internal citations and quotation mark omitted).

[134] *Diaz*, 116 F.4th at 470. *See also United States v. Johnson*, No. 1:19-CR-356, 2025 WL 1827895, at *7 (M.D. Pa. July 2, 2025) ("Defendant's other prior convictions–though not necessarily sufficient individually to establish the requisite degree of dangerousness–when considered in combination with the drug trafficking and firearm convictions, demonstrate Johnson's historical involvement in dangerous and recidivist criminal conduct."); *United States v. Jackson*, 700 F. Supp. 3d 651, 662 (N.D. Ill. 2023) ("Indeed, [Mr. Jackson's] history of recidivism over more than a decade and the increasing severity of his offenses are the hallmarks of recalcitrance, not repentance. Accordingly, even assuming that English and early American governments did not, in practice, enforce permanent firearms restrictions against individuals who demonstrated that they were no longer dangerous or untrustworthy, that does not support Mr. Jackson's claim that § 922(g)(1) is unconstitutional as applied to him.").

[135] *United States v. Edwards*, 182 F.3d 333, 335 (5th Cir. 1999) (internal quotations and punctuation omitted).

[136] *Id.* at 335.

clearly defined with sufficient definiteness.

**D.    *Whether Section 922(g)(1) Exceeds Congress' Power to Regulate Commerce***

Finally, Martin challenges 18 U.S.C. § 922(g)(1) on Commerce Clause grounds. However, he concedes that this argument is foreclosed by Fifth Circuit precedent.[137] In *Seekins*, the Fifth Circuit stated, "There is no additional requirement that, to apply the law constitutionally, the Government must prove some economic activity beyond the interstate movement of the weapon."[138] Therefore, Martin's argument that Section 922(g)(1) exceeds Congress' power to regulate commerce must fail.

**V. Conclusion**

For the reasons discussed above, the Court finds that Section 922(g)(1) does not violate the Second Amendment on its face or as applied to Martin. Martin's vagueness argument and Commerce Clause argument also fail. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Elijah Martin's Motion to Dismiss the Indictment[139] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___30th___ day of July, 2025.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[137] *United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022)

[138] *Id.*

[139] Rec. Doc. 25.